UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| DANIEL CHECKMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ALLEGIANT TRAVEL COMPANY, MAURICE J. GALLAGHER, JR., SCOTT SHELDON, STEVEN E. HARFST, and JUDE I. BRICKER,<br><br>Defendants. | Case No. 2:18-cv-1758-APG-BNW<br><br>**ORDER** |

Presently before the court is Defendants' Motion to Strike Plaintiffs' Amended Class Action Complaint for Violations of the Federal Securities Laws (ECF No. 47), Plaintiffs' opposition (ECF No. 52), and Defendants' reply (ECF No. 57), filed on December 7, 2018, January 22, 2019, and February 21, 2019, respectively.[1] Defendants' motion is denied for the reasons discussed below.

## BACKGROUND

This is a putative class action in which Plaintiffs allege that Defendant, Allegiant Travel Company (Allegiant), and some of its executives violated federal securities laws. At issue in the motion before the court are certain allegations related to one of the Defendants, Mr. Gallagher, and his tenure at a different airline, ValuJet. Defendants seek to strike the allegations related to ValuJet.

---

[1] The court also notes that Plaintiffs filed a separate notice requesting oral argument on Defendants' Motion to Dismiss and the motion before this court. (ECF No. 59.) The court does not believe oral argument is necessary to decide the motion before this court. Plaintiffs are also directed to review Local Rule 78-1, which explains the proper way to request oral argument.

Plaintiffs' claims generally center around the following allegations: Allegiant operated an "ultra-low-cost" airline. (ECF No. 34 (Amended Compl.) at 2.) Its business model included selling discounted fares and buying antiquated, second-hand passenger jets at low costs and operating them "as cheaply as possible." (*Id.* at 2-3.) To this end, Defendants "improperly cut corners to reduce Allegiant's maintenance and labor[-]related operating costs." (*Id.* at 3.) Defendants ran understaffed maintenance crews that could not adequately perform their jobs, hired unqualified and inexperienced maintenance personnel, and implemented a culture that compromised maintenance for profits. (*Id.*) Despite this, Defendants made false and misleading statements related to Allegiant's maintenance practices and the safety of its airplanes that artificially inflated the value of Allegiant's stock. (*See* ECF No. 34 (Amended Compl.).) When information regarding Allegiant's maintenance and safety issues became public, share prices fell and injured shareholders. (*See id.*)

Plaintiffs also allege that Defendant Maurice Gallagher has been Allegiant's CEO since 2003 and Chairman of the Board since 2006. (*Id.* at 9.) Before working at Allegiant, Mr. Gallagher served as an officer and director of ValuJet from 1993 until 1997. (*Id.* at 15.) While Mr. Gallagher worked at ValuJet, a ValuJet plane crashed and killed all 110 people on board. (*Id.*) After the crash, the National Transportation Safety Board (NTSB) faulted ValuJet for "improperly overseeing its maintenance subcontractor and contract maintenance program to ensure compliance with maintenance, maintenance training, and hazardous materials requirements and practices." (*Id.*) According to an article written after the crash, "ValuJet's business model was to blame for the crash: it offered discount fares, acquired old second-hand planes, paid employees below prevailing wages, and outsourced and subcontracted out maintenance to keep costs down." (*Id.*) Plaintiffs further allege that "[i]n 2001, Gallagher restructured Allegiant with a low-cost model eerily similar to ValuJet." (*Id.* at 16.)

Plaintiffs conclude that, given what happened at ValuJet, "Gallagher understood the importance of safety and maintenance of aircraft[s] and would have closely monitored such issues at Allegiant." (*Id.* at 16.) Plaintiffs also allege that "Defendants, particularly Gallagher, would have been acutely aware of Allegiant's safety issues given Gallagher's history with ValuJet, a

discount airliner that faced regulatory and public scrutiny after a flight crashed and killed all 110 people on board due to violations of safety protocols." (*Id.* at 7.)

Defendants now move to strike all these allegations relating to ValuJet. (ECF No. 47.) Defendants argue that the ValuJet allegations should be stricken under Federal Rule of Civil Procedure 12(f) as immaterial and scandalous. (*Id.* at 3.) Defendants also argue that the allegations should be stricken because they would "only sow confusion and prejudice." (*Id.*)

Plaintiffs counter that the allegations are not immaterial, as they relate to Defendants' background and scienter. (ECF No. 52 at 2-4.) Plaintiffs also argue that the allegations are not scandalous (*id.* at 4-5) and will not cause confusion or prejudice if they remain in the Amended Complaint. (*Id.* at 5-7.)

**DISCUSSION**

Rule 12(f) of the Federal Rules of Civil Procedure provides that the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The purpose of a motion to strike is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds,* 510 U.S. 517 (1994).

Allegations may be stricken from pleadings as "immaterial" if they have "no essential or important relationship to the claim for relief or the defenses being plead." *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 967 (9th Cir. 2014); *Fantasy*, 984 F.2d at 1527 (same standard); *Armed Forces Bank, N.A. v. FSG-4, LLC*, 2011 WL 5513186, at *4 (D. Nev. Nov. 10, 2011) (same).

Allegations may also be stricken from pleadings as "scandalous" if the allegation "improperly casts a derogatory light on someone, most typically on a party to the action." *Germaine Music v. Universal Songs of Polygram*, 275 F. Supp. 2d 1288, 1300 (D. Nev. July 25, 2003), *aff'd in part, rev'd in part on other grounds,* 130 F. App'x 153 (9th Cir. 2005); *see also Armed Forces Bank*, 2011 WL 5513186, at *4 (same). "Scandalous" has also been defined as "repulsive language that detracts from the dignity of the court." 2 Moore's Federal Practice § 12.37[3] at 12–97.

Rule 12(f) movants carry a heavy burden. Courts generally "disfavor motions to strike unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Dannenbring v. Wynn Las Vegas, LLC*, 907 F. Supp. 2d 1214, 1217 (D. Nev. Jan. 23, 2013); *see also Novva Ausrustung Grp., Inc. v. Kajioka*, 2017 WL 2990850, at *2 (D. Nev. July 13, 2017) ("A Rule 12(f) motion to strike is an extreme and drastic remedy—it is heavily disfavored."); *Armed Forces Bank,* 2011 WL 5513186, at *4 ("Federal courts generally disfavor motions to strike."); *Germaine Music*, 275 F. Supp. 2d at 1300 (same).

Given how disfavored motions to strike are and the facts of this case, the court cannot find that the ValuJet allegations should be stricken.

Regarding whether the ValuJet allegations are "immaterial," Plaintiffs argue that they are not as they relate to Defendants' scienter. (ECF No. 52 at 2-4.) The court agrees that these allegations may be probative of Defendants' scienter. What Mr. Gallagher knew during his tenure at ValuJet related to maintenance and safety may be relevant to what he knew during the class period at Allegiant. As such, the court cannot find that the ValuJet allegations have "no essential or important relationship to" Plaintiffs' claims at this stage. *See Petrie*, 761 F.3d at 967; *In re Applied Micro Circuits Corp. Sec. Litig.*, 2002 WL 34716875, at *10 (S.D. Cal. Oct. 4, 2002) ("[S]tatements made outside of the class period 'may have evidentiary relevance to the issue of scienter . . . because they may provide insight into what the defendants knew during the class period' and are therefore not excluded."); *Lilley v. Charren*, 936 F. Supp. 708, 719 (N.D. Cal. Feb. 23, 1996) (denying motion to strike because challenged allegations might be probative of the defendants' scienter and accordingly, they bear on the subject matter of the litigation); *Furman v. Sierra Pac. Res.*, 1993 WL 331014, at *1–2 (D. Nev. May 18, 1993) (denying motion to strike because "allegations which defendants move to strike relate to demonstrating scienter . . . .").

Regarding whether the ValuJet allegations are "scandalous," Defendants have not met their burden to demonstrate that the allegations are scandalous under the standards cited above. Defendants' motion merely suggests that the purpose of these allegations is "to impugn Gallagher's character and imply that an Allegiant flight might suffer the same tragic fate." (ECF No. 47 at 3.) Regarding Mr. Gallagher, the allegations that Defendants move to strike about him

note only that he co-founded ValuJet and served as an officer and director; that he restructured Allegiant with a low-cost model similar to ValuJet; that he would have been aware of Allegiant's safety issues given his history at ValuJet; and given what happened at ValuJet, Mr. Gallagher understood the importance of safety and maintenance of aircrafts and would have closely monitored such issues at Allegiant. (ECF No. 34 at 7, 15, 16.) These allegations do not "improperly casts a derogatory light on" Mr. Gallagher, even in the context of the Amended Complaint, in a manner that warrants striking under 12(f). *See Armed Forces Bank*, 2011 WL 5513186, at *4-5 (denying motion to strike allegations that cast bank in derogatory light but not improperly so). Defendants' assertion that Plaintiffs' allegations improperly imply that an Allegiant flight may crash like the ValuJet airliner is also unpersuasive. Defendants do not explain how any such implication "improperly casts a derogatory light on someone" (*Germaine Music*, 275 F. Supp. 2d at 1300), uses "repulsive language that detracts from the dignity of the court," (2 Moore's Federal Practice § 12.37[3] at 12–97), or is otherwise scandalous given the serious safety issues alleged in the Amended Complaint.

Defendants also suggest in their reply that Plaintiffs' allegations that ValuJet's "plane vanished into the muck after impact [and] [o]nly fragments of both the plane and passengers were recovered" is scandalous. (*See* ECF No. 57 at 1; ECF No. 34 at 15.) The court does not find that this is "repulsive language that detracts from the dignity of the court" and therefore does not find it to be scandalous. *See* 2 Moore's Federal Practice § 12.37[3] at 12–97.

Defendants also argue that the ValuJet allegations should be stricken because they would "only sow confusion and prejudice." (ECF No. 47 at 3.) However, Defendants do not explain how the ValuJet allegations would create confusion or prejudice them. (*See id.* at 3-4; ECF No. 57.) Instead, Defendants argue that the ValuJet allegations would, essentially, never be admissible at trial and should therefore be stricken so Defendants do not have to respond to them in discovery. (ECF No. 47 at 4; ECF No. 57 at 2-3.) At this stage of the case, however, it is too early to determine if any evidence of the ValuJet allegations will be admissible at trial. As discussed above, these allegations are potentially relevant to Plaintiffs' claims as they may be probative of

Defendants' scienter. Thus, the court cannot rule that no evidence related to ValuJet will be admissible at trial.

IT IS THEREFORE ORDERED that Defendants' Motion to Strike Plaintiffs' Amended Class Action Complaint for Violations of Federal Securities Laws (ECF No. 47) is DENIED.

DATED: September 10, 2019

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE