**THE ROSEN LAW FIRM, P.A.**
Jacob A. Goldberg (*pro hac vice*)
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19012
Telephone: (215) 600-2817
Facsimile: (212) 202-3827
Email: jgoldberg@rosenlegal.com

*Lead Counsel for Plaintiffs*

**LEVERTY & ASSOCIATES LAW CHTD.**
Patrick R. Leverty
832 Willow Street
Reno, Nevada 89502
Telephone: (775) 322-6636
Facsimile: (213) 322-3953
Email: pat@levertylaw.com

*Local Counsel for Lead Plaintiffs*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

CHARLES BRENDON and DANIEL CHECKMAN, Individually And On Behalf Of All Others Similarly Situated,

    Plaintiffs,

    v.

ALLEGIANT TRAVEL COMPANY, MAURICE J. GALLAGHER, JR., SCOTT SHELDON, STEVEN E. HARFST, and JUDE I. BRICKER,

    Defendants.

Case No. 2:18-cv-01758-APG-BNW

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO PLAINTIFFS**

# **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ........................................................................ 1

II.   ARGUMENT.................................................................................................... 2

   A.   This Court Should Approve Lead Counsel's Request for Attorneys
      Fees Of 25% of the Common Fund................................................................ 2

     1.   The Common Fund Doctrine Entitles Plaintiffs' Counsel to an Award of
        Attorneys' Fees.................................................................................... 2

     2.   The Court Should Apply the Percentage-of-Recovery Method .................. 3

     3.   Attorneys' Fees of 25% of the Settlement Fund is Reasonable ................. 4

     4.   Evaluation of the Ninth Circuit's Factor for Awarding Attorneys' Fees in
        Common Fund Cases Supports a 25% Fee in this Case ................................. 4

       a)   The Result Counsel Achieved Supports a 25% Fee................................ 5

       b)   The Risks of Litigation ......................................................................... 6

       c)   Skilled Counsel Performed Quality Work to Reach the Settlement.......... 8

       d)   The Contingent Nature of Counsel's Fee and the Financial Burden Lead
          Counsel Carried .................................................................................... 9

       e)   A 25% Fee Award is the Ninth Circuit's Benchmark and Is Comparable
          to Attorneys' Fees Awarded in Similar Cases ........................................ 10

     5.   The Reaction of the Settlement Class.......................................................... 12

     6.   The Lodestar Cross-Check Supports a 25% Fee ......................................... 12

   B.   The Court Should Approve Reimbursement from the Settlement Amount of
      Counsels' Out-of-Pocket Expenses Incurred Achieving the Settlement.......................... 14

i

C.   The Court Should Approve an Award to Plaintiffs for Their Reasonable Costs and Expenses Related to Their Service to the Class ............................................... 15

III.   CONCLUSION............................................................................................................... 16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO PLAINTIFFS

1

# <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996)................................................................................ 10

*ATLAS v. Accredited Home Lenders Holding Co.*,
    No. 07-CV-00488-H (CAB), 2009 WL 3698393 (S.D. Cal. Nov. 4, 2009) ............................. 6

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299 (1985)................................................................................................... 9

*Blum v. Stenson*,
    465 U.S. 886 (1984)............................................................................................... 3, 11

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)............................................................................................... 2, 3

*Buccellato v. AT & T Operations, Inc.*,
    No. C10-00463-LHK, 2011 WL 3348055 (N.D. Cal. June 30, 2011)................................... 13

*Class Plaintiffs v. Jaffe & Schlesinger, P.A.*,
    19 F.3d 1306 (9th Cir. 1994)...................................................................................... 3

*Dubeau v. Sterling Sav. Bank*,
    No. 1:12-CV-01602-CL, 2013 WL 4591034 (D. Or. Aug. 28, 2013) ................................... 4

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336 (2005)................................................................................................... 6

*Dyer v. Wells Fargo Bank, N.A.*,
    303 F.R.D. 326 (N.D. Cal. 2014) ............................................................................... 15

*Eddings v. Health Net, Inc.*,
    No. CV 10-1744-JST RZX, 2013 WL 3013867 (C.D. Cal. June 13, 2013) ........................... 4

*Ellison v. Steven Madden, Ltd.*,
    No. CV115935PSGAGRX, 2013 WL 12124432 (C.D. Cal. May 7, 2013) ............................. 3

*Evans v. Linden Research, Inc.*,
    No. C-11-01078 DMR, 2014 WL 1724891 (N.D. Cal. Apr. 29, 2014) ................................. 4

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994).......................................................................................... 14

*Harris v. Vector Mktg. Corp.*,
    No. C-08-5198 EMC, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012)........................................ 15

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO
PLAINTIFFS

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ............................................................................................ 5

*Hopkins v. Stryker Sales Corp.*,
    No. 11-CV-02786-LHK, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ..................................... 13

*In re Am. Apparel, Inc. S'holder Litig..*,
    No. CV1006352MMMJCGX, 2014 WL 10212865 (C.D. Cal. July 28, 2014) ................ 11, 15

*In re AOL Time Warner, Inc.*,
    No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ............................. 8

*In re Biolase, Inc. Sec. Litig.*,
    No. SACV131300JLSFFMX, 2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) ................. 11

*In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*,
    109 F.3d 602 (9th Cir. 1997) ............................................................................ 12

*In re Extreme Networks, Inc. Sec. Litig.*,
    No. 15-CV-04883-BLF, 2019 WL 3290770 (N.D. Cal. July 22, 2019) ......................... 11

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ...................... 7

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
    279 F.R.D. 151 (S.D.N.Y. 2011) .............................................................................. 15

*In re Heritage Bond Litig.*, No. 02-ML-1475-DT(RCX),
    2005 WL 1594389 (C.D. Cal. June 10, 2005) .............................................. 8, 11, 12

*In re Ikon Office Sols., Inc., Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000) ............................................................................. 7

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................................. 12, 15

*In re LJ Int'l, Inc. Sec. Litig.*,
    No. CV0706076GAFJWJX, 2009 WL 10669955 (C.D. Cal. Oct. 19, 2009) ..................... 11

*In re M.D.C. Holdings Sec. Litig.*,
    No. CV89-0090 E (M), 1990 WL 454747 (S.D. Cal. Aug. 30, 1990) ....................... 11

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
    No. 02 MDL 1484 (JFK), 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ......................... 6

*In re Nature's Sunshine Prod., Inc.*,
    No. 2:06-CV-267 TS, 2006 WL 2380965 (D. Utah Aug. 16, 2006) ......................... 8

*In re Netflix Privacy Litig.*,
   No. 5:11-CV-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ............................... 4

*In re Nuvelo, Inc. Sec. Litig.*,
   No. C 07-04056 CRB, 2011 WL 2650592 (N.D. Cal. July 6, 2011) ....................................... 11

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..................................................................... 5, 7, 9, 14

*In re oracle Corp. Sec. Litig.*,
   No. C01-00988SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009) ............................................ 9

*In re Pac. Enterprises Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995)...................................................................................................... 1, 4, 6

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994)...................................................................................... 3, 4, 13

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) ................................................................................. 10, 15

*Int'l Brotherhood of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
   No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742 (D. Nev. Oct. 19, 2012) ............... 4, 5, 9

*Jenson, v. First Tr. Corp.*,
   No. CV 05-3124 ABC (CTX), 2008 WL 11338161 (C.D. Cal. June 9, 2008) ...................... 15

*Katz v. China Century Dragon Media, Inc.*,
   No. LACV1102769JAKSSX, 2013 WL 11237202 (C.D. Cal. Oct. 10, 2013)................... 3, 14

*Kirchoff v. Flynn*,
   786 F.2d 320 (7th Cir. 1986)................................................................................................... 11

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
   136 F. Supp. 3d 1159 (C.D. Cal. 2015)...................................................................................... 8

*Linney v. Cellular Alaska P'ship*,
   No. C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997).......................................... 15

*Luna v. Marvell Tech. Grp.*,
   No. C 15-05447 WHA, 2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) ................................... 14

*McPhail v. First Command Fin. Planning, Inc.*,
   No. 05CV179-IEGJMA, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009) .................................... 5

*Missouri v. Jenkins by Agyei*,
   491 U.S. 274 (1989) .................................................................................................................. 13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO
PLAINTIFFS

*Powers v. Eichen*,
   229 F.3d 1249 (9th Cir. 2000)........................................................................ 4, 10

*Redwen v. Sino Clean Energy, Inc.*,
   No. CV 11-3936 PA (SSX), 2013 WL 12303367 (C.D. Cal. July 9, 2013) ............................. 7

*Robbins v. Koger Properties, Inc.*,
   116 F.3d 1441 (11th Cir. 1997)........................................................................ 10

*Rodman v. Safeway Inc.*,
   No. 11-CV-03003-JST, 2018 WL 4030558 (N.D. Cal. Aug. 23, 2018) ................................. 5

*Rodriguez v. Disner*,
   688 F.3d 645 (9th Cir. 2012)............................................................................ 4

*Rutti v. Lojack Corp.*,
   No. SACV 06-350 DOC JCX, 2012 WL 3151077 (C.D. Cal. July 31, 2012)...................... 13

*Steiner v. Am. Broad. Co.*,
   248 F. App'x 780 (9th Cir. 2007) ..................................................................... 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ...................................................................................... 9

*van Wingerden v. Cadiz, Inc.*,
   No. LACV1503080JAKJEMX, 2017 WL 5565263 (C.D. Cal. Feb. 8, 2017) ..................... 11

*Vincent v. Hughes Air West, Inc.*,
   557 F.2d 759 (9th Cir. 1977)............................................................................ 3

*Vincent v. Reser*,
   No. C 11-03572 CRB, 2013 WL 621865 (N.D. Cal. Feb. 19, 2013)............................. 3, 14

*Vinh Nguyen v. Radient Pharm. Corp.*,
   No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ........................... 7

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002)................................................................... passim

*Ward v. Succession of Freeman*,
   854 F.2d 780 (5th Cir. 1988)........................................................................... 10

*Yedlowski v. Roka Bioscience, Inc.*,
   No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016) ........................... 8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO
PLAINTIFFS

**Statutes**

15 U.S.C. §78u-4(a)(4) ............................................................................................. 15

15 U.S.C. §78u-4(a)(6) ............................................................................................... 3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO
PLAINTIFFS

Lead Plaintiff Charles Brendon ("Brendon") and Named Plaintiff Daniel Checkman ("Checkman") (collectively, "Plaintiffs"),[1] respectfully submit this memorandum of points and authorities in support of their motion for an application for an award of attorneys' fees, reimbursement of litigation expenses, and Award to Plaintiffs.[2]

## I.      PRELIMINARY STATEMENT

As detailed in the Stipulation, Allegiant Travel Company ("Allegiant" or the "Company"), Maurice J. Gallagher, Jr., Scott Sheldon, Steven E. Harfst, and Jude I. Bricker ("Defendants") have agreed to pay $4,000,000 to settle the claims Plaintiffs allege in this proposed class action ("Settlement"). Given the relevant circumstances – most notably the Actions' complicated nature and the risks of pursuing the Action through summary judgment, trial, and any appeals – this recovery is a favorable result for the Settlement Class. Through the efforts of their counsel, Plaintiffs achieved the Settlement through thorough investigation, prevailing on a motion to dismiss the Amended Complaint, and arms' length settlement negotiations.

Plaintiffs' Counsel have not received any compensation or reimbursement of out-of-pocket expenses for their prosecution of this case. Lead Counsel respectfully requests to be awarded an attorneys' fee of 25% of the Settlement Fund, including any accrued interest, and that they be reimbursed out of the Settlement Fund for out-of-pocket litigation expenses in the amount

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings set forth and defined in the Stipulation and Agreement of Settlement, filed on December 31, 2019 (the "Stipulation") (Dkt. No. 70-1).

[2] In light of the current emergency and the Court's general permission to conduct certain hearings via video-conference (General Order 2020-05), the Parties seek the Court's permission to conduct the May 14, 2020 Settlement Hearing in this case (Dkt. No. 73, at 3, para. 6) by video conference or conference call. If the Court grants permission, Plaintiffs will inform the Settlement Class of the change of format by (a) uploading this change to the Claims Administrator's website, (b) issuing a press release/follow-on summary notice, confirming the date and time of the Settlement Hearing and alerting Settlement Class Members to the change and where to seek instructions for participating in the Settlement Hearing, and (c) alerting anyone who files an objection directly about the change.

of $28,078.85 plus any accrued interest. This 25% fee request is the Ninth Circuit's "benchmark" for contingent fees. *See*, *e.g., In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) ("Twenty-five percent is the 'benchmark' that district courts should award in common fund cases"). In addition, the expenses Plaintiffs' Counsel incurred in connection with the prosecution of the Action were both reasonable and necessary to prosecute. Plaintiffs approved Plaintiffs' Counsel's request for fees and expenses. *See* Declaration of Charles Brendon ("Bredon Decl.") and Declaration of Daniel Checkman ("Checkman Decl.") attached as Exhibits 5 and 6 to the Goldberg Declaration.[3]

Finally, Lead Counsel seeks reimbursements to Plaintiffs for their time spent in carrying out their obligations on behalf of the putative class. The requested award of $5,000 for each Plaintiff, is in line with similar awards granted in other matters for the effort Plaintiffs expended for members of the Settlement Class.

Accordingly, Plaintiffs respectfully submit that the requested fees, expenses, and reimbursement to Plaintiffs should be granted.

## II.   ARGUMENT

### A.   This Court Should Approve Lead Counsel's Request for Attorneys Fees Of 25% of the Common Fund

#### 1.   The Common Fund Doctrine Entitles Plaintiffs' Counsel to an Award of Attorneys' Fees

Under the "common fund" doctrine, attorneys who achieve a benefit for a class are

---

[3] The Declaration Of Jacob A. Goldberg in Support of Plaintiffs': (1) Consented Motion For Final Approval of Proposed Class Action Settlement and Plan of Allocation; and (2) Unopposed Motion For Award of Attorneys' Fees, Reimbursement Expenses, and Award to Plaintiffs ("Goldberg Declaration" or "Goldberg Decl.") contains a detailed description of the allegations and claims, the procedural history of the Action, and the events that led to the Settlement, among other matters

The Goldberg Declaration is an integral part of this motion and is incorporated herein by reference. For the sake of brevity, the Court is respectfully referred to the Goldberg Declaration for, *inter alia*, a detailed description of the allegations and claims, the procedural history of the Action, the risks faced by the Settlement Class in pursuing litigation, the negotiations that led to a settlement, and a description of the services provided by Lead Counsel.

entitled to a reasonable fee as compensation for their services. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (establishing a common fund for persons other than the lawyer who establishes it entitles lawyer to reasonable attorneys' fees from the fund); *see also Vincent v. Reser*, No. C 11-03572 CRB, 2013 WL 621865, at *4 (N.D. Cal. Feb. 19, 2013) (quoting *Boeing*, 444 U.S. at 478). Even before that, the Ninth Circuit had reasoned that creating, increasing, or preserving a common fund entitles a lawyer to "the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The common fund doctrine prevents unjust enrichment so that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994), *aff'd in part, Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306 (9th Cir. 1994).

## 2.     The Court Should Apply the Percentage-of-Recovery Method

Even as district courts have the discretion in common fund cases to utilize either the percentage-of-the-fund or the lodestar method, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002), courts typically use the percentage-of-recovery method. *See Blum v. Stenson*, 465 U.S. 886, 900, n. 16 (1984) (percentage-of-recovery approach is appropriate for determining attorneys' fees in common fund cases); *see also*, *Ellison v. Steven Madden, Ltd.*, No. CV115935PSGAGRX, 2013 WL 12124432, at *8 (C.D. Cal. May 7, 2013) (finding "use of the percentage method" to be the "dominate approach in common fund cases."). District courts apply the percentage-of-recovery approach, preferring it over the lodestar/multiplier approach because "it aligns the lawyers' interests with those of the class [and] also simplifies the approval analysis." *Katz v. China Century Dragon Media, Inc.*, No. LACV1102769JAKSSX, 2013 WL 11237202, at *7 (C.D. Cal. Oct. 10, 2013). Further, the plain text of the Private Securities Litigation Reform Act of 1995 ("PSLRA") recognizes that the percentage-of-recovery is the preferable approach to awarding fees. *See* 15 U.S.C. §78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."). Thus, the Court should utilize the percentage-of-recovery method to compensate Lead Counsel in this case.

3

### 3. Attorneys' Fees of 25% of the Settlement Fund is Reasonable

Recognizing the utility of the percentage-of-recovery method, the Ninth Circuit has stated that "[t]wenty-five percent is the 'benchmark' that district courts should award in common fund cases." *Pac. Enters.,* 47 F.3d at 379 (emphasis added); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (reaffirming 25% benchmark); *see also Int'l Brotherhood of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742, at *4 (D. Nev. Oct. 19, 2012) ("Twenty-five percent should be the 'bench mark' percentage, but the district court may adjust upward or downward to account for the circumstances in each case.") (citation omitted); *Evans v. Linden Research, Inc.*, No. C-11-01078 DMR, 2014 WL 1724891, at *6 (N.D. Cal. Apr. 29, 2014) ("25% of the recovery obtained is the benchmark in the Ninth Circuit.") (citing *Vizcaino*, 290 F.3d at 1047); *Dubeau v. Sterling Sav. Bank*, No. 1:12-CV-01602-CL, 2013 WL 4591034, at *3 (D. Or. Aug. 28, 2013) (same); *Eddings v. Health Net, Inc.*, No. CV 10-1744-JST RZX, 2013 WL 3013867, at *5 (C.D. Cal. June 13, 2013) (same); *In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *9 (N.D. Cal. Mar. 18, 2013) (same).

The guiding principle in this Circuit is that a fee award be "reasonable under the circumstances." *WPPSS*, 19 F.3d at 1296 (citation and emphasis omitted). In employing the percentage method, courts may perform a lodestar cross-check to confirm the reasonableness of the requested fee. *Vizcaino*, 290 F.3d at 1047 (affirming use of percentage method and applying the lodestar method as a cross-check). Here, in view of the result obtained, the contingent fee risk, the lodestar cross-check, and other relevant factors, an award of 25% of the recovery obtained for the Settlement Class is appropriate under either analysis.

### 4. Evaluation of the Ninth Circuit's Factor for Awarding Attorneys' Fees in Common Fund Cases Supports a 25% Fee in this Case

Courts in the Ninth Circuit consider several factors when determining whether a fee award is "reasonable under the circumstances." *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012). These factors include: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the

4

plaintiffs; (5) the reaction of the Settlement Class; and (6) awards made in similar cases. *See Vizcaino*, 290 F.3d at 1048–51. The Ninth Circuit has explained that district courts should not use these factors as a rigid checklist or otherwise weigh each factor individually. Rather, courts should evaluate fees they award in the context of the totality of the circumstances. *Id.* Each of these factors, along with the lodestar cross-check, supports approving the requested fee.

### a)      The Result Counsel Achieved Supports a 25% Fee

Courts consistently recognize that the result achieved is an important factor to consider in evaluating a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting the "most critical factor is the degree of success obtained"); *Rodman v. Safeway Inc.*, No. 11-CV-03003-JST, 2018 WL 4030558, at *3 (N.D. Cal. Aug. 23, 2018); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). Plaintiffs submit that the $4 million proposed Settlement is a favorable result for the Settlement Class, both quantitatively and when considering the risk of a lesser, or no, recovery if the case proceeded through class certification, summary judgment, and trial.

The Settlement is in-line with other securities fraud settlements, representing a recovery of over 9% of Plaintiffs' estimated class wide damages. As reported by Cornerstone Research, for securities class actions with damages between $25 million and $75 million, between 2009 and 2017 the median settlement as a percentage of damages was 7.6% and for 2018 was 9.9%. *See* Cornerstone Research, *Securities Class Action Settlements: 2018 Review and Analysis* at 6 (attached to the Goldberg Decl. as Exhibit 1). The percentage of recovery in this case is in line with recoveries in other securities class actions within the Ninth Circuit. *See, e.g., Brotherhood of Elect. Workers*, 2012 WL 5199742, at *3 (approving settlement recovering about 3.5% of the maximum damages that plaintiffs believe could be recovered at trial and noting that the amount is within the median recovery in securities class actions settled in the last few years); *McPhail v. First Command Fin. Planning, Inc.*, No. 05CV179-IEGJMA, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (settlement recovering 7% of estimated damages was fair and adequate); *Omnivision*, 559 F. Supp. 2d at 1042 (settlement yielding 6% of potential damages after deducting fees and costs was "higher than the median percentage of investor losses recovered in recent

shareholder class action settlements"). The recovery also compares favorably to recoveries achieved in cases in other Circuits. *See, e.g., In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (A settlement representing a recovery of approximately 6.25% of estimated damages is "at the higher end of the range of reasonableness of recovery in class actions securities litigations."). The Settlement Amount thus supports this Court's awarding a 25% fee.

### b)      The Risks of Litigation

The risk of further litigation is also an important factor in determining a fair fee award. *Vizcaino*, 290 F.3d at 1048 (noting "[r]isk is a relevant circumstance" in awarding attorneys' fees); *Pac. Enters.*, 47 F.3d at 379 (finding that attorneys' fees were justified "because of the complexity of the issues and the risks"); *see also ATLAS v. Accredited Home Lenders Holding Co.*, No. 07-CV-00488-H (CAB), 2009 WL 3698393, at *3 (S.D. Cal. Nov. 4, 2009) (approving settlement where "litigating the complex securities fraud class action to completion would have resulted in substantial delay and expense"). As Plaintiffs describe, substantial risks and uncertainties in the Action required the skill and focus of Lead Counsel to bring this matter to a favorable resolution. Goldberg Decl., at ¶¶ 28-42.

Although the Amended Complaint survived Defendants' motion to dismiss, risk existed that Plaintiffs would ultimately fail to establish liability and the Settlement Class' full amount of damages. Plaintiffs faced challenges in proving that Defendants' alleged misstatements about Allegiant's safety and maintenance policies and practices were material and made with scienter. Defendants would have denied that Plaintiffs could prove that there was an intentional or severely reckless violation of the Securities Exchange Act of 1934 ("Exchange Act"). Countering this theme at summary judgment and trial would have required nuanced evidence regarding the maintenance and safety of Allegiant's airplanes. Significant hurdles to Plaintiffs' ability to convince a fact-finder of this key element of Plaintiffs' claims loomed.

In addition, the Parties have asserted different positions regarding loss causation. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345–46 (2005) (plaintiffs bear the burden of proving "that the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover'").

Defendants would also have continued to assert that the alleged corrective disclosures did not reveal any misrepresentations or omissions and that the truth of the alleged misstatements were already on the market. If they prevailed, the class claims would have failed. *See Vinh Nguyen v. Radient Pharm. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) (approving settlement and noting that "[p]roving and calculating damages required a complex analysis, requiring the jury to parse divergent positions of expert witnesses in a complex area of the law" with "[t]he outcome of that analysis [being] inherently difficult to predict"). At summary judgment and/or trial, the Parties would have vigorously contested loss causation, involving a costly and uncertain battle of the experts.

Accordingly, Plaintiffs faced the possibility that the Court would grant Defendants' anticipated motion for summary judgment and, regardless of who would ultimately be successful at trial, both sides would have had to present complex and nuanced information to a jury with no certainty as to the outcome. *See In re Omnivision*, 559 F. Supp. 2d at 1047 (noting that the risks of litigation, including the ability to prove loss causation and the risk that Defendants prevail on damages, support the requested fee).[4]

But for the resolution, Plaintiffs and the Settlement Class faced the risk of years of litigation with no guarantee of a greater recovery. Lead Counsel achieved a positive result for the Settlement Class in the face of many risks. Under these circumstances, the result in the case, too, supports awarding 25% in attorneys' fees.

---

[4] While courts have always recognized that securities class actions carry significant risks, post-PSLRA rulings make it clear that the risk of no recovery (and hence no fee) has increased exponentially. *See Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936 PA (SSX), 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013) ("Courts experienced with securities fraud litigation, 'routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear.'" (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *17 (S.D.N.Y. Nov. 8, 2010))); *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (noting that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### c) Skilled Counsel Performed Quality Work to Reach the Settlement

Courts recognize that the "prosecution and management of a complex national class action requires unique legal skills and abilities." *In re Heritage Bond Litig.*, No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005) (citation omitted); *see also Vizcaino*, 290 F.3d at 1048. Courts also have acknowledged the "notorious complexity" of securities class action litigation. *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006).

Here, Lead Counsel investigated Plaintiffs' claims to formulate their theory of the case, filed the initial complaint, and having developed sufficient detail to defeat Defendants' motion to dismiss, filed the Amended Complaint. Lead Counsel's investigation included, *inter alia*, reviewing and analyzing publicly available information concerning Defendants and interviewing several former Allegiant employees. Additionally, Lead Counsel worked with Plaintiffs' loss causation and damages consultants to analyze the strengths and weaknesses of the claims asserted in the Action.

Lead Counsel, The Rosen Law Firm, P.A. ("Rosen Firm"), are experienced securities class action litigators.[5] Courts around the country have recognized Rosen Firm's experience and competence. *See Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016) ("[Rosen Firm] is highly experienced in the complex field of securities fraud class action litigation"); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is 'highly qualified [and] experienced' in securities class actions"); *In re Nature's Sunshine Prod., Inc.*, No. 2:06-CV-267 TS, 2006 WL 2380965, at *2 (D. Utah Aug. 16, 2006) (Rosen Firm is "qualified, experienced and able to vigorously conduct the proposed litigation."). The favorable Settlement is attributable in substantial part to Lead Counsel's diligence, determination, hard work, and skill as it developed,

---

[5] *See* Rosen Firm's firm resume attached as Exhibit A to the Declaration of Jacob A. Goldberg of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses ("Rosen Firm Fee Decl.").

litigated, and successfully negotiated the Settlement. This factor supports a 25% fee.

> **d)** **The Contingent Nature of Counsel's Fee and the Financial Burden Lead Counsel Carried**

Lead Counsel undertook this action on an entirely contingent fee basis, taking the risk that the litigation would yield no or very little recovery and leave it uncompensated for its time, as well as for its out-of-pocket expenses. Courts across the country recognize that the risk of receiving little or no recovery is a material factor in determining an award of attorneys' fees. *See Vizcaino*, 290 F.3d at 1048–50; *Omnivision*, 559 F. Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee."); *see also Brotherhood of Electrical Workers*, 2012 WL 5199742, at *4 (awarding fee of 25% of the common fund and noting that "[p]laintiffs' counsel shouldered the risk of non-payment by taking the class action suit on a contingency fee basis."). The Supreme Court has emphasized that private securities actions such as this provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (citation omitted); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (noting that the court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions).[6]

Indeed, in many securities class actions, plaintiffs' counsel took on the risk of pursuing claims on a contingency basis, expended considerable resources, yet received no remuneration whatsoever despite their diligence and expertise. *See, e.g., In re oracle Corp. Sec. Litig.*, No. C01-00988SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009) (granting summary judgment to defendants

---

[6] Additionally, vigorous private enforcement of the federal securities laws can only occur if private plaintiffs can obtain some semblance of parity in representation with that available to corporate defendants. If this important public policy is to be carried out, courts should award fees that will adequately compensate private plaintiffs' counsel, taking into account the risks undertaken with a clear view of the economics of a securities class action.

after eight years of litigation, and after plaintiff's counsel incurred over $6 million in expenses and worked over 100,000 hours, representing a lodestar of approximately $48 million). Often, because of discovery of previously unknown facts, changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, contingency litigation yields no fee for counsel. *See, e.g, Ward v. Succession of Freeman*, 854 F.2d 780 (5th Cir. 1988) (reversing plaintiffs' jury verdict for securities fraud); *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing case with prejudice); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation). As the court in *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980 (D. Minn. 2005) recognized, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *Id.* at 994.  Even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion.

Since Lead Counsel's fee was entirely contingent, the only certainty was that there would be no fee without a successful result and that achieving success on behalf of Plaintiffs and the Class depended upon Lead Counsel's expending significant amounts of time, effort, and expense. Unlike Defendants' counsel who are paid hourly and reimbursed for their out-of-pocket expenses on a current basis, Lead Counsel has received no compensation for their efforts on behalf of Plaintiffs and the Class during the course of this litigation. Absent this Settlement, a material risk existed that Settlement Class Members and their counsel would obtain no recovery. Lead Counsel have risked non-payment of its out-of-pocket expenses and time dedicated to working on this matter, knowing that if their efforts were not successful, no fee would be paid. The contingent nature of Plaintiffs' counsel's fee arrangement supports a 25% fee.

> **e)**   **A 25% Fee Award is the Ninth Circuit's Benchmark and Is Comparable to Attorneys' Fees Awarded in Similar Cases**

Lead Counsel seeks the 25% benchmark the Ninth Circuit has established for attorneys' fees. *Eichen*, 229 F.3d at 1256 ("We have also established twenty-five percent of the recovery as

a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach."). This requested fee is reasonable when compared to fee awards in similarly-sized securities class action settlements from district courts within the Ninth Circuit. *See, In re Beckman Coulter, Inc. Sec. Litig.*, No. 8:10-cv-1327-JST (RNBx), slip op. at 3 (C.D. Cal. Mar. 1, 2012) (awarding fees of 25% of $5.5 million settlement); *In re Nuvelo, Inc. Sec. Litig.*, No. C 07-04056 CRB, 2011 WL 2650592, at *3 (N.D. Cal. July 6, 2011) (awarding fees of 30% of $8.9 million settlement); *City of Westland Police and Fire Ret. Sys. v. Sonic Sols.*, No. C 07-05111- CW, slip op. at 1 (N.D. Cal. Apr. 8, 2010) (awarding fees of 25% of $5 million settlement); *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-CV-04883-BLF, 2019 WL 3290770, at *11 (N.D. Cal. July 22, 2019) (awarding fees of 25% of $7 million settlement); *In re Am. Apparel, Inc. S'holder Litig..*, No. CV1006352MMMJCGX, 2014 WL 10212865, at *27 (C.D. Cal. July 28, 2014) (awarding fees of 25% of $4.8 million settlement); *van Wingerden v. Cadiz, Inc.*, No. LACV1503080JAKJEMX, 2017 WL 5565263, at *13 (C.D. Cal. Feb. 8, 2017) (awarding fees of 25% of $3 million settlement); *In re LJ Int'l, Inc. Sec. Litig.*, No. CV0706076GAFJWJX, 2009 WL 10669955, at *7 (C.D. Cal. Oct. 19, 2009) (awarding fees of 25% of $2 million settlement); *In re Biolase, Inc. Sec. Litig.*, No. SACV131300JLSFFMX, 2015 WL 12720318, at *8 (C.D. Cal. Oct. 13, 2015) (awarding fees of 25% of $1.75 million settlement).

Further, if this were not a class action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery. *See, e.g., Blum*, 465 U.S. at 903 n.* ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery."); *In re M.D.C. Holdings Sec. Litig.*, No. CV89-0090 E (M), 1990 WL 454747, at *7 (S.D. Cal. Aug. 30, 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery."); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (40% contractual award if case had gone to trial).

Accordingly, the attorneys' fee Plaintiffs request is within the range of fees district courts within the Ninth Circuit have awarded in comparable securities class action settlements.

### 5.    The Reaction of the Settlement Class

District courts in the Ninth Circuit also consider the reaction of the class when deciding whether to award fees and reimbursement of out-of-pocket expenses. *See Heritage*, 2005 WL 1594389, at *15 ("The presence or absence of objections . . . is also a factor in determining the proper fee award."). To date, Strategic Claims Services has mailed to potential Settlement Class members 44,881 copies of the Postcard Notice, published Summary Notice in *Investor's Business Daily* and through *GlobeNewswire*, and uploaded to a URL copies of the Stipulation, Long Notice, Proof of Claim, and Preliminary Approval Order. Bravata Decl. ¶¶6 9, 11. While the time to object to the fee and expense application does not expire until April 23, 2020, to date, not a single objection has been received. *Id.* at ¶13. "The lack of objection from any Class Member supports the attorneys' fees award." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). Should Plaintiffs receive any objection, Lead Counsel will address them in their reply papers. The lack of objection to the fees Plaintiffs notified the Settlement Class they would seek further supports a 25% fee.

### 6.    The Lodestar Cross-Check Supports a 25% Fee

Courts often compare attorneys' lodestar with a requested fee request made under the percentage of the fund method as a "cross check" on the reasonableness of the requested fee. *See Vizcaino*, 290 F.3d at 1050; *see also In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997) (comparing the lodestar fee to the percentage fee is an appropriate measure of a percentage fee's reasonableness).

Plaintiffs' Counsel's combined lodestar to date is $416,515.75. The requested fee represent a multiplier of 2.4. Goldberg Decl. ¶61. The Ninth Circuit recognizes when utilizing the percentage-of-fund approach in common fund cases and applying a lodestar cross-check, an award resulting in a multiplier several times the lodestar is appropriate as this rewards attorneys "for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Vizcaino*, 290 F.3d at 1051 (citation omitted). For example, the district court in *Vizcaino*, 290 F.3d 1043 approved a fee that reflected a multiple of 3.65 times counsel's lodestar. *Id.* The Ninth Circuit affirmed, holding that the district court correctly

considered the range of multiples applied in common fund cases, and noting that a range of lodestar multiples from 1.0 to 4.0 are frequently awarded. *Id.;*[7] *see also Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) ("this multiplier [of 6.85] falls well within the range of multipliers that courts have allowed"); *Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases."); *Buccellato v. AT & T Operations, Inc.*, No. C10-00463-LHK, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (granting 4.3 multiplier).

Plaintiffs' Counsel's lodestar represents 602.84 hours of work at current billing rates.[8] With respect to billing rates, Plaintiffs' Counsel submit that the rates billed, for attorneys ranging from $425 to $975 are comparable to peer defense-side law firms litigating matters of similar magnitude. Goldberg Decl. ¶60.

Lead Counsel will also do additional work in support of the Settlement and distribution of the Settlement Fund to Settlement Class Members for which it will receive no additional compensation, including: preparation for, and participation in, the final approval hearing; responding to any objections; supervising the claims administration process being; moving for distribution the Net Settlement Fund in accordance with the Claims Administrator's recommendation; and supervising the distribution of the Net Settlement Fund to Settlement Class

---

[7] Furthermore, "[i]t is an established practice in the private legal market to reward attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, Economic Analysis of Law § 21.9, at 534-35 (3d ed. 1986). "Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose." *WPPSS*, 19 F.3d at 1299.

[8] The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283–84 (1989); *Rutti v. Lojack Corp.*, No. SACV 06-350 DOC JCX, 2012 WL 3151077, at *11 (C.D. Cal. July 31, 2012) ("it is well-established that counsel is entitled to current, not historic, hourly rates") (citing *Jenkins*, 491 U.S. at 284).

Members who have submitted valid claims. The lodestar cross check, therefore, supports this Court's awarding a fee of 25% of the Settlement Fund.

More, considering these factors together, including Plaintiffs' Counsels' risk, their efforts, and the result in this case, this Court should award a fee of 25%.

**B.    The Court Should Approve Reimbursement from the Settlement Amount of Counsels' Out-of-Pocket Expenses Incurred Achieving the Settlement**

Plaintiffs' Counsel have incurred expenses in an aggregate amount of $28,078.85[9] in prosecuting the Action. This request is below the $40,000 reimbursement of expenses ceiling the Notice stated. These expenses are outlined in counsel's declarations submitted to the Court concurrently herewith. *See* Goldberg Decl., ¶¶65-68, Exs. 3 and 4.

"Attorneys who create a common fund are entitled to the reimbursement of expenses they advanced for the benefit of the class." *Reser*, 2013 WL 621865, at *5. In assessing whether counsel's expenses are compensable in a common fund case, courts look to whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'") (citation omitted); *Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").

Here, Plaintiffs' Counsel seeks expenses that are of the type routinely charged to hourly paying clients and, therefore, should be reimbursed out of the common fund. *Katz*, 2013 WL 11237202, at *8 (granted expenses for "filing fees … private investigation fees, service of process fees, … press release and notice fees, expert consulting costs, photocopying costs, and online legal research expenses, and travel associated with pursuing the case."); *Luna v. Marvell Tech. Grp.*, No. C 15-05447 WHA, 2018 WL 1900150, at *4 (N.D. Cal. Apr. 20, 2018) (reimbursement for experts, investigators, travel, filing costs, photocopies, and online legal and factual research

---

[9] The expense request is comprised of $26,654.88 from Rosen Firm and $1,423.97 from Leverty & Associates Law Chtd.

granted as they were all reasonable and necessary.). The largest expenses Plaintiffs' Counsel incurred include investigator fees, travel fees, notice to class member fees, court filing fees, expert fees, and investigator fees. *See* Exs. 3 and 4 to the Goldberg Decl.

In sum, Plaintiffs' Counsel's expenses, in an aggregate amount of $28,078.85 were reasonably and necessarily incurred in the prosecution of the Action and should be approved.

## C.   The Court Should Approve an Award to Plaintiffs for Their Reasonable Costs and Expenses Related to Their Service to the Class

In connection with Lead Counsel's request for reimbursement of litigation expenses, Plaintiffs seek reimbursement of $5,000 each in costs for their time dedicated to this litigation. The PSLRA provides that courts are empowered to approve such awards to reimburse plaintiffs for reasonable costs and expenses related to the representation of the class. *See* 15 U.S.C. § 78u-4(a)(4). Accordingly, "[c]ourts across the country embrace incentive awards in light of the enormous benefits created by the class representatives." *Jenson, v. First Tr. Corp.*, No. CV 05-3124 ABC (CTX), 2008 WL 11338161, at *16 (C.D. Cal. June 9, 2008). The Ninth Circuit has noted that "[i]ncentive fees for class representatives serve much the same function as attorneys' fees do in the class action context: they provide the economic incentive necessary to ensure that meritorious actions are prosecute." *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, at *7 (N.D. Cal. July 18, 1997), *aff'd,* 151 F.3d 1234 (9th Cir. 1998).

Courts in the Ninth Circuit find that reimbursements to plaintiffs for their service to classes in the amount requested here, $5,000 each, are "presumptively reasonable." *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) ("Several courts in this District have indicated that incentive payments … as a general matter [of] $5,000 is a reasonable amount."). In fact, courts within this circuit and around the country have granted even larger reimbursements to class representatives. *See e.g., Immune Response,* 497 F. Supp. 2d at 1173-74 ($40,000 reimbursement to lead plaintiff); *Jenson,*, 2008 WL 11338161, at *16 ($20,000 reimbursement to lead plaintiff); *Linney*, 1997 WL 450064, at *7 ($25,000 reimbursement to lead plaintiff); *Am. Apparel, Inc. S'holder Litig..*, 2014 WL 10212865, at *33 ($6,600 reimbursement to lead plaintiff);

15

*Dyer*, 303 F.R.D. at 336 ($10,000 reimbursement to lead plaintiffs); *In re Xcel Energy, Inc., Sec., Deriv. & ERISA Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) (approving a $100,000 award to lead plaintiffs, and noting that awards to lead plaintiffs are important because they further "the important policy role [lead plaintiffs] play in the enforcement of the federal securities laws on behalf of persons other than themselves"); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 166 (S.D.N.Y. 2011) (awarding $10,000 as an incentive and for lost time).

Both Plaintiffs fulfilled their obligations as representatives of this action, reviewing all pleadings, discussing with counsel Defendants' motions to dismiss and strike and the oppositions thereto, and participating in and approving the Settlement amount and reviewing the settlement papers. Plaintiffs detail their efforts on behalf of the Settlement Class in the Brandon Decl. and the Checkman Decl. that they attach as Exhibits 5 and 6 to the Goldberg Declaration. Accordingly, Plaintiffs respectfully request that this Court approve a payment of $5,000 to each Plaintiff.

## III.   CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests the Court award attorneys' fees of 25% of the Settlement Fund, reimbursement of out-of-pocket litigation expenses in the amount of $28,078.85 plus interest accrued, and $5,000 payments to each Plaintiff.

Dated: April 16, 2020

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ *Jacob A. Goldberg*
Jacob A. Goldberg (*pro hac vice*)
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19012
Telephone: (215) 600-2817
Facsimile: (212) 202-3827
Email: jgoldberg@rosenlegal.com

***Lead Counsel for Plaintiffs***

and

16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LEVERTY & ASSOCIATES LAW CHTD.**
Patrick R. Leverty
Nevada Bar No. 8840
832 Willow Street
Reno, Nevada 89502
Email: Pat@levertylaw.com

*Local Counsel for Plaintiffs*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO PLAINTIFFS

<strong><u>CERTIFICATE OF SERVICE</u></strong>

I hereby certify that on April 16, 2020, I electronically filed the foregoing **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO PLAINTIFFS** with the Clerk of Court using the CM/ECF system, which will send notification of such to all CM/ECF participants.

/s/*Jacob A. Goldberg*
Jacob A. Goldberg

18